UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALINA SIPP-ALPERS, CYNTHIA AYERS, SHAKA BELLO, MADELINE BROWN, CASSANDRA CHAVEZ, CRAIG CONLEE, JACK COLLINS, WILLIAM COOPER, ALFRED CULPEPPER, KYLE DEVASIER, SETH GILLES, NOAH HARPER, WHITNEY HUMPHREY, MATTHEW JEWELER, DELANCEY LANE, PATRICIA MITCHELL, THOMAS NAGLER, ANDREAS PEREA, RICHARD PORTER, EMILY ROTOLO, SCOTT SANDERS, VICTORIA STONER, JUSTIN THOMPSON, WHYLIE THOMPSON, NATHAN WINCH, ISAAC URNER, and SARAH URONKA, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>MICHAEL BLOOMBERG, and MIKE BLOOMBERG 2020, INC.,<br><br>            Defendants. | Civil Action No. _____ |

**CLASS ACTION COMPLAINT**

    **I.**      **INTRODUCTION**

    1.     Plaintiffs Alina Sipp-Alpers, Cynthia Ayers, Shaka Bello, Madeline Brown, Cassandra Chavez, Craig Conlee, Jack Collins, William Cooper, Alfred Culpepper, Kyle DeVasier, Seth Gilles, Noah Harper, Whitney Humphrey, Matthew Jewler, DeLancey Lane, Patricia Mitchell, Thomas Nagler, Andreas Perea, Richard Porter, Emily Rotolo,

Scott Sanders, Victoria Stoner, Justin Thompson, Whylie Thompson, Nathan Winch, Isaac Urner, and Sarah Uronka, file this Class Action Complaint against Defendants Michael Bloomberg and Mike Bloomberg 2020, Inc. ("the campaign") for breach of contract associated with their work for defendants during the 2020 U.S. presidential election.

2.      In November 2019, billionaire Michael Bloomberg, former Mayor of New York, announced that he was entering the race for the 2020 Democratic presidential nomination.  Having entered the primary race much later than his Democratic rivals, he quickly established a nationwide campaign, hiring thousands of field organizers and other campaign staffers around the country.  In order to attract talent, and to build up his campaign operation quickly, he made an unusual promise to the staff he was hiring: in addition to paying them generous salaries and benefits, he guaranteed they would keep their jobs until the general election, through November 2020.  He promised them that, if he did not win the Democratic nomination, he would keep the campaign organization running through the general election, in support of whichever candidate won the Democratic nomination.

3.      However, after Mr. Bloomberg's candidacy faltered, and he dropped out of the race after a disappointing performance on Super Tuesday, he reneged on this promise he had made to campaign staffers nationwide.  Rather than keep the operation running to support the Democratic nominee as promised, or providing any other employment, the Bloomberg campaign simply shuttered and terminated its staff nationwide.  Staff who had joined the campaign with the understanding they would have jobs, with generous pay and benefits, until November 2020, and who had repeatedly

received this promise, found themselves unexpectedly jobless (and many far from home) just as the coronavirus pandemic was unfolding in March 2020.

4. Plaintiffs bring this case as a class action, on behalf of themselves and all similarly situated campaign workers, nationwide, seeking to recover damages they suffered based on the Bloomberg campaign's premature termination of its staff and failure to pay their promised wages and benefits through November 2020.

## II. PARTIES

5. Plaintiff Alina Sipp-Alpers is an adult resident of Massachusetts who worked for the campaign in Massachusetts.

6. Plaintiff Cynthia Ayers is an adult resident of Colorado who worked for the campaign in California.

7. Plaintiff Shaka Bello is an adult resident of Maryland who worked for the campaign in Ohio.

8. Plaintiff Madeline Brown is an adult resident of Washington who worked for the campaign in Washington.

9. Plaintiff Cassandra Chavez is an adult resident of California who worked for the campaign in Washington.

10. Plaintiff Craig Conlee is an adult resident of California who worked for the campaign in California.

11. Plaintiff Jack Collins is an adult resident of Washington who worked for the campaign in Washinton and California.

12. Plaintiff William Cooper is an adult resident of Colorado who worked for the campaign in Colorado.

13. Plaintiff Alfred Culpepper is an adult resident of Washington who worked for the campaign in Washington.

14. Plaintiff Kyle DeVasier is an adult resident of Nevada who worked for the campaign in Colorado.

15. Plaintiff Seth Gilles is an adult resident of Washington who worked for the campaign in Washington.

16. Plaintiff Noah Harper is an adult resident of Massachusetts who worked for the campaign in New York.

17. Plaintiff Whitney Humphrey is an adult resident of Ohio who worked for the campaign in Ohio

18. Plaintiff Matthew Jeweler is an adult resident of Maryland who worked for the campaign in Colorado.

19. Plaintiff DeLancey Lane is an adult resident of Washington who worked for the campaign in Washington.

20. Plaintiff Patricia Mitchell is an adult resident of California who worked for the campaign in California.

21. Plaintiff Thomas Nagler is an adult resident of Maine who worked for the campaign in Maine.

22. Plaintiff Andreas Perea is an adult resident of Colorado who worked for the campaign in Colorado.

23. Plaintiff Richard Porter is an adult resident of Washington who worked for the campaign in Washington.

24. Plaintiff Emily Rotolo is an adult resident of Virginia who worked for the campaign in Colorado.

25. Plaintiff Scott Sanders is an adult resident of Ohio who worked for the campaign in Ohio.

26. Plaintiff Victoria Stoner is an adult resident of Washington who worked for the campaign in Washington.

27. Plaintiff Justin Thompson is an adult resident of Ohio who worked for the campaign in Ohio.

28. Plaintiff Wylie Thompson is an adult resident of Oregon who worked for the campaign in Washington.

29. Plaintiff Nathan Winch is an adult resident of Washington who worked for the campaign in Washington.

30. Plaintiff Isaac Urner is an adult resident of Washington who worked for the campaign in Washington.

31. Plaintiff Sarah Yuronka is an adult resident of Ohio who worked for the campaign in Ohio.

32. Defendant Michael Bloomberg is an adult resident of New York. He is a successful businessman and a former mayor of New York City, and he ran for the Democratic presidential nomination in 2020.

33. Defendant Mike Bloomberg 2020, Inc., which employed Plaintiffs during the 2020 U.S. presidential election, is Michael Bloomberg's presidential campaign committee. It is a Delaware corporation with its principal place of business located at 909 Third Avenue, New York, New York. Mr. Bloomberg funded the campaign himself.

### III. JURISDICTION AND VENUE

34. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332(d) because the Defendants and Class Members are citizens of different states, there are expected to be more than 100 Class Members, and the amount in controversy is expected to exceed $5,000,000.

35. The Court has personal jurisdiction over the campaign and Mr. Bloomberg because they conducted substantial business in this District. In particular, Mr. Bloomberg wholly funded the campaign with his own money, he personally made the promise of guaranteed employment through November 2020, on a call with his campaign staff in this District, and he personally made the decision to terminate campaign staff rather than honoring his promise to keep them employed.

36. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to these claims occurred in this District, including many of the wrongs herein alleged.

### IV. STATEMENT OF FACTS

37. On November 24, 2019, Michael Bloomberg announced that he was entering the race for the 2020 Democratic presidential nomination.

38. The Bloomberg campaign hired thousands of field organizers and other campaign staffers to work on the campaign nationwide. Plaintiffs were among those staff members. As noted above, Bloomberg, through his campaign, made an unusual promise in hiring these staff members: it guaranteed them a job through November 2020, regardless of how Mr. Bloomberg fared in the primary election.

39. Since Mr. Bloomberg entered the primary race much later than the rest of

the Democratic field, he took this extra measure in order to attract talent and hire a large nationwide staff quickly.

40. In each state, the Bloomberg campaign's operations were overseen by a State Director. The State Director oversaw several categories of operations, including organizers: people tasked with contacting voters and getting out the vote. Organizers were led by the Organizing Director. The Organizing Director supervised several Regional Organizing Directors, who in turn supervised Field Organizers.

41. During interviews for their positions, Bloomberg campaign staffers of all levels were orally promised that they would be guaranteed employment through November 2020 with Team Bloomberg. campaign staff were told, further, that the location of their employment was not guaranteed. Campaign staff generally understood that they might be reassigned to work in other states depending on the needs of the campaign during the primary and general elections.

42. After these interviews, and when the campaign offered a position to a staffer, the campaign sent copies of employment paperwork, which they were required to sign before beginning work. Despite the oral promise of guaranteed employment, made to all incoming campaign staff during their job interviews, the employment paperwork specified that employment was at will and explained that this meant either the campaign or the staff member could be terminated at any time and for any reason.

43. After employees signed their employment paperwork, and despite the at-will language in this paperwork, the Bloomberg campaign continued to promise each employee—forcefully and, at times, publicly—they were guaranteed employment through November 2020. The campaign made this promise in a variety of ways.

44. First, the Bloomberg campaign sought media coverage stressing: (1) the campaign's commitment to, and investment in, a long-term effort against Donald Trump, regardless of whether Mr. Bloomberg was the Democratic nominee; (2) Mr. Bloomberg's decision to fund his campaign personally, his vast personal wealth, his philanthropy, and his past financial support of Democratic candidates; and (3) his trustworthiness.

45. Second, the Bloomberg campaign publicly took actions meant to communicate a long-term commitment to the campaign. For example, in February 2020, the Bloomberg campaign opened a campaign office in New Hampshire after the state's Democratic primary election. Actions like this were intended to signal Mr. Bloomberg's commitment to staying in the race, regardless of whether he won the Democratic nomination—and, in turn, was committed to keeping his promise of employing staff through November 2020.

46. Third, Bloomberg campaign headquarters provided staff members with a script to use when interviewing and hiring other staff members. This script required staff to advise interviewees that employment was guaranteed "through November 2020 with Team Bloomberg," though the location of employment was not guaranteed. Notably, staff members using this script received it *after* they had heard the same promise in their own interviews, and *after* they signed at-will employment contracts with the campaign.

47. Fourth, the Bloomberg campaign required new employees to attend training sessions after signing their employment paperwork. At the training, campaign staff repeated the promise of employment through November 2020 to new employees in order to keep them motivated and committed to working for the campaign. The

Bloomberg campaign also provided staff with materials to be used, during these training sessions, which stressed Mr. Bloomberg's long-term commitment to remaining in the race.

48.     Fifth, at various times after training, and throughout the primary campaign, campaign officials reiterated the promise of employment through November, 2020 to campaign staff. Officials did this, for example, when campaign staff had questions about the length of their employment, had questions about moving to a new state after the primary election, and to motivate employees to work hard as part of an effort that would last through November, 2020.

49.     Thousands of campaign staff across the country accepted their positions with the Bloomberg campaign based on the promise of guaranteed wages and benefits through the general election regardless of how Mr. Bloomberg fared in the primary.

50.     After signing their employment contracts, thousands of campaign staff across the country continued working hard for the Bloomberg campaign based on the continued promise of guaranteed wages and benefits through the general election, regardless of how Mr. Bloomberg fared in the primary.

51.     On March 3, 2020 (Super Tuesday), Democratic primary elections were held in 15 jurisdictions.  Mr. Bloomberg fared poorly, winning only in the U.S. territory of American Samoa.  Mr. Bloomberg came in third or fourth place in the remaining states.

52.     The following day, March 4, 2020, Mr. Bloomberg announced that he was suspending his campaign.

53.     During an all-staff conference call on March 4, 2020, campaign staff nationwide, including Plaintiffs, were told that the Bloomberg campaign was ending and

that Mr. Bloomberg intended to support Joe Biden as the Democratic candidate for president. Staff were told that they would "have an opportunity to join us in that fight [against Donald Trump], in those key battlegrounds, through November."

54. However, two weeks later, on March 20, 2020, the campaign held another all-staff conference call.  On that call, the campaign staff were informed that they were being laid off and would receive their last paychecks on March 31, 2020.

55. Staff were told, further, that they could submit their information to the campaign, to be passed on to the DNC, if they were interested in working on another Democratic campaign in the 2020 election cycle.  However, the staff would receive no advantages in hiring or guarantees of employment based on their having been employed on the Bloomberg campaign.

56. Many Bloomberg campaign staff, including several of the named plaintiffs, submitted their information to be passed on to the DNC but received no response and were not hired by another campaign.

57. Thus, contrary to his promise to his campaign staff of guaranteed employment through the general election in November 2020, Mr. Bloomberg, through his campaign, terminated his staff nationwide and issued them their final paycheck on March 31, 2020.  Mr. Bloomberg and his campaign thereby breached his agreement to his staff, which was widely relied on by staff in accepting jobs with the campaign.  Mr. Bloomberg and his campaign deprived the staff of their promised wages and benefits through November 2020, by illegally ending their employment prematurely.

58. Bloomberg campaign staff nationwide, including Plaintiffs, suffered lost wages and benefits, as well as other damages, based upon Defendants' legal violations

described here.

59. Nygel O'Bannon was a Bloomberg 2020 campaign worker in Massachusetts whose facts are identical to this alleged above; he was promised employment through November 2020 but was fired when the campaign ended in March 2020. On May 22, 2025, a jury found in his favor on his breach of contract claim, awarding him his full pay and benefits through November 2020.

## V.     CLASS ALLEGATIONS

60. The Court should certify this case as a class action on behalf of all Bloomberg campaign staff, nationwide, under Fed. R. Civ. P. 23.

61. The class is so numerous that joinder of all members is impracticable. The Bloomberg campaign employed more than 2,000 staff members throughout the United States.

62. There are questions of law and fact common to the class, including whether the Bloomberg campaign promised class members employment through November 2020, whether it was reasonable for class members to rely on this promise, and whether the Bloomberg campaign illegally terminated class members, and stopped paying their wages and benefits, prior to November 2020.

63. The named Plaintiffs' claims are typical of those of the class members. Plaintiffs' claims encompass the challenged practices and course of conduct of the Bloomberg campaign.  Furthermore, Plaintiffs' legal claims are based on the same legal theories as the claims of the class members. The legal issues as to which laws are violated by such conduct apply equally to Plaintiffs and to the class.

64. The named Plaintiffs will fairly and adequately protect the interests of the

class. The named Plaintiffs' claims are not antagonistic to those of the class and they have hired counsel skilled in the prosecution of class actions.

65. Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. This proposed class action presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

## COUNT I

## BREACH OF CONTRACT

Defendants' premature termination of Plaintiffs and the class, and their failure to pay them wages and benefits due to them through November 2020, constitutes breach of contract in violation of the common law. Plaintiffs and the class suffered damages as a result of this breach, in the form of lost wages and benefits, as well as other damages.

The law of breach of contract is materially similar in each state in which Plaintiffs and the class worked for Defendants, and thus a class can be certified for breach of contract based upon breach of contract under the laws of those states.

## JURY DEMAND

Plaintiff requests a trial by jury on their claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter the following relief:

a. Certify a national class action and appoint Plaintiffs and their counsel to represent a class of Bloomberg campaign staff who were terminated after the campaign ended, in violation of a contract guaranteeing their employment through November 2020;

b. Award compensatory damages, including restitution of lost wages and benefits;

c. Award pre- and post-judgment interest;

d. Award any other relief to which the Plaintiffs and the class may be entitled.

Respectfully submitted,

ALINA SIPP-ALPERS et al, on behalf of themselves and all others similarly situated,

By their attorneys,

_____
Shannon Liss-Riordan, BBO# 640716
Michael J. Romano (*pro hac vice forthcoming*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994–5800
sliss@llrlaw.com
mromano@llrlaw.com

Dated:     June 24, 2025