**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| _____ ) | | |
| ALINA SIPP-ALPERS, et al., on  ) | | |
| behalf of themselves and all  ) | | |
| others similarly situated,  ) | | |
| ) | | |
| Plaintiffs,  ) | | |
| ) | | |
| v.  ) | Civil Action | |
| ) | No. 25-cv-11822-PBS | |
| MICHAEL BLOOMBERG and MIKE  ) | | |
| BLOOMBERG 2020, INC.,  ) | | |
| ) | | |
| Defendants.  ) | | |
| _____ ) | | |

**MEMORANDUM AND ORDER**

June 18, 2026

Saris, J.

**INTRODUCTION**

Plaintiffs, who worked for Michael Bloomberg's failed 2020 presidential campaign, allege that Bloomberg and his campaign guaranteed continued wages through November 2020 regardless of the outcome of the election but then reneged on this promise when Bloomberg suspended his campaign in March 2020. Massachusetts resident Alina Sipp-Alpers and thirty-five named plaintiffs who worked in other states (the "Out-of-State Plaintiffs") bring this putative class action for breach of contract against Bloomberg and Mike Bloomberg 2020, Inc. (the "Campaign").

Defendants now move to dismiss all claims except for Sipp-Alpers' against the Campaign under Federal Rule of Civil Procedure

1

12(b)(2) and (b)(6). The Court concludes that it lacks personal jurisdiction over Defendants with respect to the Out-of-State Plaintiffs' claims and thus that those individuals' claims must be dismissed without prejudice. As to Sipp-Alpers' claim, however, the Court determines that it has personal jurisdiction and that the claim may proceed against Bloomberg individually (in addition to the Campaign). Defendants' motion to dismiss (Dkt. 22) therefore is **ALLOWED IN PART** and **DENIED IN PART**.

## BACKGROUND

In adjudicating a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded facts alleged in the operative complaint and draws reasonable inferences in Plaintiffs' favor. See Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 128 (1st Cir. 2023). With respect to a motion to dismiss for lack of personal jurisdiction, the Court "draw[s] the relevant facts from 'the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to [Plaintiffs'] version of genuinely contested facts.'" Ward v. AlphaCore Pharma, LLC, 89 F.4th 203, 209 (1st Cir. 2023) (quoting Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016)).

In November 2019, Bloomberg entered the Democratic primary race for the 2020 U.S. presidential election. He self-funded his presidential campaign. In order to attract talent, the Campaign

2

"made an unusual promise," guaranteeing staff members continued employment through November 2020 regardless of Bloomberg's performance in the election. Dkt. 19 ¶ 47. During interviews for their positions, campaign staffers were orally given this promise. The staffers' employment paperwork, however, specified that their employment was "at will." Id. ¶ 51.

Nevertheless, after the staffers signed the paperwork, the Campaign continued to guarantee employment through November 2020. It did so in various ways. For example, the Campaign provided staff members with a script to use when interviewing job applicants; the script required interviewers to inform applicants that employment was guaranteed through November 2020. Similarly, at training sessions, the Campaign's staffers repeated the oral promise of continued employment to new employees "in order to keep them motivated and committed to working for the campaign." Id. ¶ 56. And at numerous times after training, Campaign officials reiterated the promise when asked by employees. Bloomberg also personally promised guaranteed employment through November 2020 during a call with Massachusetts campaign staff.

Plaintiffs allege that they accepted their positions with the Campaign based on the guarantee of continued compensation through November 2020. They further allege that "[a]fter signing their employment contracts," Plaintiffs "continued working hard for

3

the . . . [C]ampaign based on the continued promise of guaranteed wages and benefits through the general election." Id. ¶ 59.

On March 3, 2020, Bloomberg fared poorly in various primary elections held on "Super Tuesday." Id. ¶ 60. The following day, he suspended his campaign. Two weeks later, on March 20, 2020, the Campaign held an all-staff conference call in which it informed Plaintiffs (and all other staffers) that they would be laid off and would receive their final paychecks on March 31, 2020.

In their putative class action complaint, Plaintiffs allege that both Bloomberg and the Campaign committed breach of contract by terminating Plaintiffs' employment on March 31, 2020, despite guaranteeing compensation through November 2020. Now before the Court is Defendants' motion to dismiss all claims except for the one asserted by Sipp-Alpers (the sole named plaintiff who worked for the Campaign in Massachusetts) against the Campaign.

## **LEGAL STANDARD**

### I.   **Rule 12(b)(2)**

Where, as here, a challenge to personal jurisdiction under Rule 12(b)(2) is "made at the inception of the litigation -- without the benefit of either pretrial discovery or an evidentiary hearing -- the classic prima facie approach applies." Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 94 (1st Cir. 2024). Under the prima facie approach, a court "ask[s] 'whether the plaintiff[s] ha[ve] proffered facts that, if credited, would support all

4

findings essential to personal jurisdiction.'" Putnam v. EPR Props., 174 F.4th 214, 221 (1st Cir. 2026) (second and third alterations in original) (quoting Ward, 89 F.4th at 209). The plaintiffs "must 'go beyond the pleadings and make affirmative proof'" to demonstrate personal jurisdiction. Rosenthal, 101 F.4th at 94 (quoting United Elec., Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)). A reviewing court then "mine[s] the relevant facts from 'the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts,'" id. (quoting Baskin-Robbins, 825 F.3d at 34), but also accepting evidence offered by the defendants "to the extent that [it is] uncontradicted," Putnam, 174 F.4th at 221 (quoting Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007)).

## II. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (cleaned up). This standard

requires a court to "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The court must then determine whether the factual allegations permit it "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## DISCUSSION

### I.   Personal Jurisdiction

Because the Court is "sitting in diversity jurisdiction, [it] act[s] as 'the functional equivalent of a state court sitting in the forum state" -- i.e., Massachusetts. Rosenthal, 101 F.4th at 94-95 (citation omitted) (quoting Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009)). Plaintiffs therefore must demonstrate that the Court's jurisdiction over Defendants "satisfies both the strictures of the Due Process Clause and the requirements of the Massachusetts long-arm statute." Id. at 95 (citations omitted).

Under the Due Process Clause, a defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'" Id. (alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A court may exercise jurisdiction over an out-of-state defendant via either general or specific jurisdiction. See id. The parties agree that general jurisdiction is lacking here, leaving only specific jurisdiction at issue. Specific jurisdiction exists where a plaintiff demonstrates that (1) each "claim . . . directly arise[s] from or relate[s] to the defendant's activities in the forum" state; (2) "the defendant's forum-state contacts . . . 'represent a purposeful availment of the privilege of conducting activities in that state'"; and (3) "the exercise of specific jurisdiction in the forum [state] . . . [is] reasonable under the circumstances." Id. (quoting Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 59 (1st Cir. 2020)).

The Massachusetts long-arm statute provides, as relevant here, that personal jurisdiction exists "as to a cause of action . . . arising from the [defendant]'s . . . transacting any business" in Massachusetts. Mass. Gen. Laws ch. 223A, § 3(a). A court has personal jurisdiction under this provision where (1) "the defendant . . . transacted business in Massachusetts," and (2) "the plaintiff's claim . . . ar[ose] from the transaction of business by the defendant." Exxon Mobil Corp. v. Att'y Gen., 94 N.E.3d 786, 793 (Mass. 2018) (quoting Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass. 1994)). Because the long-arm statute

7

potentially "impose[s] more restrictive limits on the exercise of personal jurisdiction than does the" Due Process Clause, both tests must independently be satisfied for a court to exercise personal jurisdiction. Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016); see SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017).

Defendants concede that the Court has personal jurisdiction over Sipp-Alpers' claim against the Campaign. Defendants assert, however, that the Court lacks personal jurisdiction over (1) Sipp-Alpers' claim against Bloomberg, and (2) the claims of the Out-of-State Plaintiffs against both Defendants. The Court tackles each of these arguments in turn, rejecting the first but agreeing with the second.

## A.   Sipp-Alpers' Claim Against Bloomberg

Personal jurisdiction over Sipp-Alpers' claim against the Campaign cannot be imputed to Bloomberg. Rather, an independent basis for jurisdiction over Bloomberg must exist. Cf. Hahn v. Vt. L. Sch., 698 F.2d 48, 52 (1st Cir. 1983) ("[J]urisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation." (quoting Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 906 (1st Cir. 1980))). The Court concludes that Sipp-Alpers has met her burden of demonstrating personal jurisdiction as to her claim against Bloomberg.

8

First, Sipp-Alpers "has offered evidence establishing that [her] claim[] 'directly arise[s] out of or relate[s] to the defendant's forum-state activities.'" Vapotherm, Inc. v. Santiago, 38 F.4th 252, 258 (1st Cir. 2022) (quoting Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018)). Because Sipp-Alpers' claim is for breach of contract, this "relatedness" inquiry centers on "whether [Bloomberg]'s activity in [Massachusetts] was 'instrumental either in the formation of the contract or its breach.'" Id. at 258-59 (quoting Adelson, 510 F.3d at 49). Sipp-Alpers has offered evidence that Bloomberg personally promised continued employment through November 2020 during a call with Massachusetts campaign staff. See Dkt. 27-3 at 3-4. This personal guarantee is related to Sipp-Alpers' claim that Bloomberg's promise either amended her employment agreement with the Campaign or formed a new contract for continued employment.

Similarly, Bloomberg's personal promise to Massachusetts campaign staff satisfies the "purposeful availment inquiry." Rosenthal, 101 F.4th at 96. This "inquiry 'focus[es] on the defendant's intentionality' and rests on two cornerstones: 'voluntariness' and 'foreseeability.'" Id. (alteration in original) (quoting A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 60 (1st Cir. 2016)). By allegedly making the guarantee of continued employment to Massachusetts staffers, Bloomberg voluntarily

9

availed himself of Massachusetts and could "reasonably anticipate being haled into court there." Id. (quoting Chen, 956 F.3d at 59).

Third, exercising jurisdiction over Bloomberg would be "fair and reasonable." Vapotherm, 38 F.4th at 262. It is not burdensome for Bloomberg to appear in Massachusetts, and the commonwealth has an interest in resolving the dispute given the allegation that Bloomberg personally made the guarantee of continued employment to Massachusetts staffers. See A Corp., 812 F.3d at 61. The Due Process requirements for personal jurisdiction thus are satisfied.

The Massachusetts long-arm statute's requirements are met too. Bloomberg's alleged call to the Massachusetts campaign office constitutes "transacting any business in th[e] commonwealth." Mass. Gen. Laws ch. 223A, § 3(a); see Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) (noting that this standard is construed "generous[ly]" with a "focus on 'whether the defendant[] attempted to participate in the commonwealth's economic life" (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992)). The call also "was a 'but for' cause of the harm alleged in [Sipp-Alpers'] claim" that Bloomberg formed, and then violated, a contract for continued employment through November 2020. Id.

Defendants cite two Massachusetts Superior Court decisions finding no personal jurisdiction over Bloomberg in lawsuits involving similar claims brought by other campaign staffers. See

10

Fontaine v. Bloomberg, No. 2081CV01192, Dkt. 9 (Mass. Super. Ct. July 1, 2021); Doty v. Bloomberg, No. 2581CV01556, Dkt. 10 (Mass. Super. Ct. Mar. 23, 2026). The Court is not persuaded by either. In Fontaine, the plaintiffs did not provide evidence of Bloomberg's phone call to Massachusetts campaign staff, instead alleging only that the Campaign made the promise of continued employment. See No. 2081CV01192, Dkt. 9 at 4-5. In Doty, the plaintiffs did provide evidence of the phone call, but the court found "the phone call . . . not sufficient to alter the analysis" and concluded, "based essentially on the reasoning in [the] [d]efendants' memorandum, that the [c]ourt d[id] not have personal jurisdiction over . . . Bloomberg." No. 2581CV01556, Dkt. 10 at 4-5. The Court disagrees with the conclusion in Doty, which lacked any legal explanation, and instead concludes that by allegedly calling Massachusetts staffers and promising them guaranteed employment, Bloomberg availed himself of Massachusetts as a forum for this lawsuit.

### B.   Out-of-State Plaintiffs' Claims Against Defendants

The Court next addresses whether personal jurisdiction exists over both Defendants with respect to the Out-of-State Plaintiffs' breach-of-contract claims. The Court concludes that unlike Sipp-Alpers' claim, the Out-of-State Plaintiffs' claims lack a sufficient nexus to Massachusetts and thus must be dismissed for lack of personal jurisdiction.

11

Unlike Sipp-Alpers, the Out-of-State Plaintiffs never worked for the Campaign in Massachusetts or signed any employment paperwork there. And the Out-of-State Plaintiffs do not claim that any of them were on the call that Bloomberg allegedly made to Massachusetts campaign staff. Bloomberg made two visits to Massachusetts, neither of which had any connection to hiring or firing staff.

The Out-of-State Plaintiffs contend that personal jurisdiction nevertheless exists because Bloomberg "built a campaign infrastructure in Massachusetts, hired staff in Massachusetts, and solicited votes in Massachusetts." Dkt. 27 at 4. They also assert that "[t]he [C]ampaign's lack of success in Massachusetts (and elsewhere) impacted Plaintiffs and putative class members from other states" because "when the [C]ampaign failed to win delegates in Massachusetts[] and other Super Tuesday states, it shuttered." Id. at 5. In other words, the Out-of-State Plaintiffs argue that Defendants' "decision to suspend the campaign, and break [their] promise of employment through November 2020, arose from an extremely poor showing on Super Tuesday -- including in Massachusetts." Id. at 9.

This broad theory of personal jurisdiction, under which jurisdiction would exist in every individual Super Tuesday state, does not withstand scrutiny. The Court has personal jurisdiction over the Out-of-State Plaintiffs' breach-of-contract claims only

if Defendants' "activit[ies] in [Massachusetts] w[ere] 'instrumental either in the formation of the contract or its breach.'" Vapotherm, 38 F.4th at 258-59 (emphasis added) (quoting Adelson, 510 F.3d at 49). That Bloomberg campaigned in Massachusetts, and fared poorly there, is not sufficiently connected to the alleged decision to promise continued employment through November 2020 and then to renege on that promise.

The fact that personal jurisdiction exists over both Defendants with respect to Sipp-Alpers' claim does not alter the analysis. Rather, the Out-of-State Plaintiffs' claims must have an independent connection to the forum state, even where the claims are similar to Sipp-Alpers' claim. See Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255, 265 (2017).

The Out-of-State Plaintiffs argue that Bristol-Myers Squibb is inapplicable because it "addressed the Fourteenth Amendment's limitation on a state court's exercise of personal jurisdiction and left open 'whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.'" Dkt. 27 at 10-11 (emphases added) (citation omitted) (quoting Bristol-Myers Squibb, 582 U.S. at 269). They further contend that the First Circuit has held that the Fifth Amendment does not bar an out-of-state resident from suing in this context. See id. at 11 (citing Waters v. Day & Zimmermann NPS, Inc., 23 F.4th 84, 92 (1st Cir. 2022)).

13

This argument misconstrues Waters. That case solely concerned personal jurisdiction in federal court "over purely federal-law claims," holding that an out-of-state plaintiff can bring suit "under a federal statute in federal court if the defendant maintained the 'requisite "minimum contacts" with the United States.'" Waters, 23 F.4th at 92 (quoting 163 Pleasant St. Corp., 960 F.2d at 1085). Where, as here, a state-law claim is brought in federal court sitting in diversity jurisdiction, the usual rule applies that the federal court "follow[s] state law in determining the bounds of [its] jurisdiction over persons." Fuld v. Pal. Liberation Org., 606 U.S. 1, 11 (2025) (quoting Daimler AG v. Bauman, 571 U.S. 117, 125 (2014)).

The Out-of-State Plaintiffs further assert that "[c]ourts have declined to extend Bristol-Myers [Squibb] to federal class actions." Dkt. 27 at 11 n.8. It is true that some courts have declined to find that Bristol-Myers Squibb requires the dismissal of out-of-state class members. See, e.g., Lyngaas v. Curaden AG, 992 F.3d 412, 432-33 (6th Cir. 2021); Mussat v. IQVIA, Inc., 953 F.3d 441, 447-48 (7th Cir. 2020). But that does not obviate the requirement of personal jurisdiction with respect to each named class representative, including the Out-of-State Plaintiffs. See Mussat, 953 F.3d at 447 (noting that "the named representatives

14

must be able to demonstrate . . . personal jurisdiction"); Lyngaas,

992 F.3d at 437 (same).[1]

The Out-of-State Plaintiffs' breach-of-contract claims thus

are governed by Bristol-Myers Squibb and cannot piggyback on Sipp-

Alpers' claim. Accordingly, the Court lacks personal jurisdiction

under the Due Process Clause with respect to those claims and will

grant Defendants' motion to dismiss as to the Out-of-State

Plaintiffs.[2] The Court denies the Out-of-State Plaintiffs' cursory

request for jurisdictional discovery, which is not presented in a

motion "but, rather, [is] merely mentioned . . . in [Plaintiffs']

opposition to [Defendants'] motion to dismiss." Motus, LLC v.

CarData Consultants, Inc., 23 F.4th 115, 127 (1st Cir. 2022). The

Out-of-State Plaintiffs' request "contain[s] no indication of what

facts might be developed through discovery" that would support

personal jurisdiction as to their claims. Id. at 128.

---

[1] The Court need not decide at this juncture whether Sipp-Alpers could serve as a class representative for out-of-state class members. See Molock v. Whole Foods Mkt. Grp., Inc., 952 F.3d 293, 296 (D.C. Cir. 2020) (finding motion to dismiss putative class members "premature because prior to class certification[,] putative class members are not parties to the action").

[2] Because personal jurisdiction does not exist under the Due Process Clause, the Court need not address the Massachusetts long-arm statute. See Rosenthal, 101 F.4th at 95. Additionally, because the Court lacks personal jurisdiction with respect to the Out-of-State Plaintiffs' claims, the Court need not adjudicate Defendants' state-law merits arguments that various of those claims must be dismissed as time-barred or for failure to state a claim.

## II.  **Breach of Contract**

The Court now turns to the merits of the sole remaining claim: Sipp-Alpers' breach-of-contract claim against both Defendants. Defendants concede that the claim may proceed against the Campaign but move to dismiss the claim against Bloomberg under Rule 12(b)(6). They argue that the claim must be dismissed because Bloomberg was not a party to Sipp-Alpers' employment contract with the Campaign and thus could not have breached that contract.

Sipp-Alpers acknowledges that Bloomberg was not a party to her written employment agreement. Bloomberg therefore "cannot be held liable for breach" of that written agreement. Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 129 (1st Cir. 2006). Further, the operative complaint contains no allegation that Bloomberg acted with malice. See Chagnon v. Truefort, Inc., 772 F. Supp. 3d 198, 212 (D. Mass. 2025) ("[I]n Massachusetts[,] officers 'ordinarily [are] not liable for the corporation's breach of contract,' unless the officer induces the breach out of malice." (third alteration in original) (quoting Union Mut. Life Ins. Co. v. Chrysler Corp., 793 F.2d 1, 11 (1st Cir. 1986))).

Sipp-Alpers argues that Bloomberg can be held liable for the Campaign's alleged breach under a corporate veil-piercing theory. She cites the complaint's allegations that Bloomberg personally established, funded, and decided to end his presidential campaign. But "[w]ithout other allegations of corporate improprieties,

16

[Sipp-Alpers] ha[s] failed to plead sufficient facts to maintain [her] claim of individual liability." Malaro v. Wilkie, 640 F. Supp. 3d 192, 196 (D. Mass. 2022); see also Zimmerman v. Puccio, 613 F.3d 60, 74 (1st Cir. 2010) ("In Massachusetts, 'the corporate veil will only be pierced in rare situations.'" (quoting Birbara v. Locke, 99 F.3d 1233, 1239 (1st Cir. 1996))).

Sipp-Alpers does plausibly allege that Bloomberg was an agent of the Campaign and modified her employment contract by promising continued employment. "[I]t is well settled Massachusetts law that parties, through their words or conduct, may modify a contract despite a provision requiring modifications to be in writing." Bachorz v. Miller-Forslund, 703 F.3d 27, 33 (1st Cir. 2012); see Cambridgeport Sav. Bank v. Boersner, 597 N.E.2d 1017, 1022 (Mass. 1992) ("[A] provision that an agreement may not be amended orally but only by a written instrument does not necessarily bar oral modification of the contract."). Further record development is necessary to determine whether Bloomberg was an agent of the Campaign and was authorized to modify Sipp-Alpers' contract. Even if he was, however, this theory does not support his status as a named defendant -- rather, the Campaign would still be the counterparty to Sipp-Alpers' contract.

If Bloomberg did not act as an agent of the Campaign, however, Sipp-Alpers adequately alleges that Bloomberg formed (and subsequently breached) an independent oral contract with her. The

17

complaint alleges that Bloomberg "personally made the promise of guaranteed employment through November 2020" in a call with Massachusetts campaign staff, Dkt. 19 ¶ 44, and that Sipp-Alpers "continued working hard . . . based on th[is] continued promise of guaranteed wages and benefits through the general election," id. ¶ 59. Defendants dispute that "th[e] claimed phone call somehow established a [separate] contract between individual staffers and . . . Bloomberg individually" and state that "[e]ven reading it most generously, the passing comment asserts that . . . Bloomberg attempted to orally modify Plaintiffs' at-will agreements . . . with the Campaign." Dkt. 23 at 19 n.12. The Court disagrees. At the pleading stage, the Court liberally construes the complaint to allege the existence of an enforceable oral contract between Sipp-Alpers and Bloomberg based on the phone call to Massachusetts staffers. See Vacca v. Brigham & Women's Hosp., Inc., 156 N.E.3d 800, 807 (Mass. App. Ct. 2020) ("An oral contract, like any other, requires an offer, acceptance, and consideration." (quoting Vasconcellos v. Arbella Mut. Ins. Co., 853 N.E.2d 571, 574 (Mass. App. Ct. 2006))). Under Massachusetts law, "merely continuing one's employment can be sufficient consideration." Suominen v. Goodman Indus. Equities Mgmt. Grp., LLC, 941 N.E.2d 694, 702 n.11 (Mass. App. Ct. 2011). Bloomberg was properly named as a defendant under this theory.

18

19

## ORDER

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 22) is **ALLOWED** with respect to the Out-of-State Plaintiffs but **DENIED** with respect to Sipp-Alpers.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge